*Brocklehurst v. PPG Indus., Inc.,* 123 F.3d 890, 898 (6th Cir. 1997) (holding that the soundness of an employment decision may not be challenged as a means of showing pretext); *Town*, 568 N.W.2d at 69 (holding that pretext cannot be shown by demonstrating that the employer's decision was wrong or mistaken).

Although Hein established a prima facie case of disparate treatment by submitting evidence that a younger driver took over his former route, AAP and Ludwinski shifted the burden of persuasion back to Hein by articulating a clear and legitimate non-discriminatory reason for Hein's dismissal—his refusal to make the July 8, 1997 delivery. Hein's subjective interpretation regarding the age of the gorilla portrayed on the April 1996 magazine cover is the only actual evidence he presented to show that Ludwinski's proferred reason was pretextual. As already noted, such subjective interpretations are insufficient as a matter of law to establish a discrimination claim. *See Mitchell*, 964 F.2d at 585. Accordingly, Hein has failed to establish a valid claim for age discrimination under the theory of disparate impact.

With respect to Hein's weight discrimination claim, Hein fails to even state a prima facie case of disparate treatment. No evidence in the record shows that Hein's replacement weighed less than Hein, or that Hein was treated differently than similarly-situated drivers from outside the protected class. Rather, Hein was the only driver who ever flatly refused to make a requested run under circumstances where it could have been safely done with reasonable diligence on his part. Furthermore, as stated earlier, even assuming that Hein could establish a prima facie case, he failed to rebut the proffered nondiscriminatory explanation that Hein was fired for refusing to make the July 8, 1997 delivery. Hein has therefore failed to establish a valid claim for weight discrimination on the theory of disparate treatment.

### III. CONCLUSION

For all the reasons stated above, we **AFFIRM** the judgment of the district court.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0390P (6th Cir.)
File Name: 00a0390p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————

WAYNE HEIN,
  *Plaintiff-Appellant,*

  *v.*

ALL AMERICA PLYWOOD COMPANY, INCORPORATED; KURT ADAM LUDWINSKI, jointly and severally,
  *Defendants-Appellees.*

No. 99-1381

Appeal from the United States District Court for the Eastern District of Michigan at Detroit. No. 98-71941—Gerald E. Rosen, District Judge.

Argued: September 22, 2000

Decided and Filed: November 14, 2000

Before: MERRITT, KENNEDY, and GILMAN, Circuit Judges.

---

**COUNSEL**

---

**ARGUED:** Barry S. Fagan, DIB & FAGAN, Royal Oak, Michigan, for Appellant.  Brian H. Rolfe, FALCONE & ROLFE, Southfield, Michigan, for Appellees. **ON BRIEF:** Barry S. Fagan, DIB & FAGAN, Royal Oak, Michigan, for Appellant.   Brian H. Rolfe, FALCONE & ROLFE, Southfield, Michigan, for Appellees.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge.  Wayne Hein, a 45-year-old, 5'8", 200-pound truck driver who suffers from hypertension, appeals from an adverse summary judgment ruling in his suit against his former employer, All America Plywood Company (AAP), and its president Kurt Adam Ludwinski.  Hein was fired after he refused to make an out-of-town delivery that was assigned to him five days in advance.  Contending that he was unable to make the delivery because he would have run out of his blood-pressure medication before his return, Hein alleged that his termination constituted a violation of public policy and illegal disability discrimination.  He also claimed discrimination based on both age and weight.  The district court granted summary judgment in favor of the defendants.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A.  Basis for public policy and disability discrimination claims

Hein had worked at AAP for sixteen years.  His regular delivery territory was western Michigan and Toledo, Ohio.  Since 1989, Hein has been diagnosed with hypertension.  His medical routine was to have a periodic check-up every six

---

discrimination.  *See id.*  Accordingly, the district court correctly found no evidence of intentional discrimination on the basis of age or weight.

### 2.  *Disparate treatment*

To determine whether a plaintiff has a valid claim for illegal disparate treatment on the basis of age or weight, we apply the burden-shifting evidentiary framework originally articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  Under this framework, the plaintiff must show that he was (1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position from which he was rejected or terminated, and (4) either replaced by a person from outside the protected class, or treated differently than a similarly situated employee from outside the protected class.  *See Mitchell*, 964 F.2d at 582; *Town*, 568 N.W.2d at 68.  If the plaintiff establishes a prima facie case, the burden of persuasion shifts to the employer to present a legitimate non-discriminatory reason for the challenged employment decision.  *See Burdine*, 450 U.S. at 253.  Should the employer carry this burden of persuasion, then the burden returns to the plaintiff to prove by a preponderance of the evidence that the employer's proferred reason was in fact a pretext designed to mask illegal discrimination.  *See id.*

A plaintiff who alleges employment discrimination can show pretext by successfully attacking the proferred reason for the adverse employment decision.  *See Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 373-74 (6th Cir. 1999) (holding that pretext can be shown by demonstrating that the reason had no basis in fact, did not motivate the discharge, or was never used in the past to discharge an employee); *Dubey v. Stroh Brewery Co.*, 462 N.W.2d 758, 760 (Mich. Ct. App. 1990) (holding that pretext can be shown by establishing that the reason had no basis in fact, did not motivate the discharge, or was insufficient to justify the decision).  Pretext, however, cannot be shown by attacking the decision itself.  *See*

not only that the plaintiff's employer was predisposed to discriminate on the basis of age, but also that the employer acted on that predisposition. *See Downey v. Charlevoix County Bd. of Rd. Comm'rs*, 576 N.W.2d 712, 717-18 (Mich. Ct. App. 1998) (finding that the employer's agent acted on his predisposition towards age discrimination when he repeatedly stated that he was going to "get rid" of all the older workers).

Even if the three pieces of evidence that Hein presented were not deemed to be "isolated," he still would have failed to establish a prima facie case of intentional age or weight discrimination because the evidence was neither direct nor credible. Hein relies solely on the modified magazine cover to establish Ludwinski's predisposition against older workers, arguing that the gorilla on the cover is old and wrinkled. The gorilla, however, appears age-neutral when viewed objectively, and is therefore at best an ambiguous comment on Hein's age. Hein's subjective belief that the gorilla is "old" is insufficient as a matter of law to establish intentional age discrimination. *See Mitchell*, 964 F.2d at 585.

Hein also fails to present a prima facie case of intentional weight discrimination. Although the Big Boy sales updates, the references to "weight limits," and the "Burger Boy" nicknames might raise a genuine issue of material fact as to Ludwinski's predisposition towards weight discrimination, Hein presented no evidence to connect Ludwinski's alleged prejudice against heavier individuals with his decision to fire Hein. Both the sales updates and the modified magazine cover were created over five months before Hein was fired, and there is no evidence in the record that Ludwinski initiated the nicknames.

Hein also argues that because his high blood pressure is "inextricably" tied to his weight, Ludwinski's statement of disbelief about the significance of Hein's disability constituted evidence that Ludwinski fired Hein on the basis of weight discrimination. Without further support, this is nothing more than a conclusory allegation, and therefore insufficient as a matter of law to establish weight

months with his doctor, at which time the doctor prescribed a six-month supply of blood-pressure medication. Hein's general practice was to call his doctor a week in advance to schedule an appointment. According to this routine, he was due for a check-up on July 8, 1997.

Each week, AAP makes at least one delivery to its customers in Cleveland, Ohio. It only had three drivers licensed to make the Cleveland run—Hein, Jack Hinton, and Bill Johnson. Several weeks before the delivery scheduled for July 8, 1997, Hinton, the regular Cleveland driver, posted a notice on the company bulletin board that he would be on vacation. Johnson later notified AAP that he, too, would be unavailable because he needed to stay home to take care of his children on July 8. Hein was consequently given notice by the route scheduler on July 3, 1997 that he was assigned to make the delivery. He told the route scheduler that he could not make the delivery because he was running out of blood-pressure medicine and needed to see his doctor. Hein admitted, however, that the scheduler did not excuse him from his run.

On the day before the scheduled delivery, Hein told Ludwinski that he would be unable to take the Cleveland assignment because he would run out of his medication during the trip and could not obtain a timely refill due to his regular doctor being on vacation. He did not attempt to meet with another doctor in the practice group or obtain medication elsewhere prior to this conversation. After the conversation, Ludwinski gave Hein twenty minutes to reconsider. When Hein took no corrective action, Ludwinski told Hein that he should not return to work. Johnson ended up making the July 8 delivery. Hein's former route was temporarily taken over by the route scheduler, and then by David Richardson, who was then 29 years old.

## B.   Basis for age and weight discrimination claims

To prove age and weight discrimination, Hein submitted three pieces of evidence. He first cited a January 1997 "sales update" sheet with a cartoon of a reclining Big Boy from the

Big Boy restaurant chain, captioned "Wayne Hein Contemplates Lotto Scheme." Ludwinski produced these sales updates, which often poked fun at various AAP employees, and distributed them throughout the company.

Next, Hein presented an April 1996 magazine cover that Ludwinski hung in the company's main office. The cover depicted a gorilla, which Hein described as old, wrinkled, and heavy. The caption on the cover had been modified to read "Wayne Hein Ponders Weight Limits." Although his truck was ticketed for being overweight around the time the cover was produced, Hein argues that this cover was intended to deride his weight.

Finally, Hein noted that his coworkers frequently called him as "Burger Boy," "Buffet Boy," "Double Cheese," and "Turtle Hein," and highlighted how AAP's driver-contact list referred to him as "Buffet Boy." Hein, however, did not establish that any of these nicknames were originated by Ludwinski.

## C.   Summary of Hein's legal theories

Hein filed a complaint in the Wayne County Circuit Court alleging disability discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213, and the Michigan Persons with Disabilities Civil Rights Act (PDCRA), MICH. COMP. LAWS §§ 37.1101-607; age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, and the Michigan Elliot-Larsen Civil Rights Act, MICH. COMP. LAWS §§ 37.2101-2804; weight discrimination under the Elliot-Larsen Act; and a common law claim of wrongful discharge in violation of public policy. The case was removed to the United States District Court for the Eastern District of Michigan on May 11, 1998.

Following discovery, AAP and Ludwinski both moved for summary judgment. In an opinion and order dated March 5, 1999, the district court entered summary judgment in their

N.W.2d 64, 68 (Mich. 1997) (same under the Elliot-Larsen Act).

Federal and state courts have recognized that this burden can be met by presenting direct evidence of intentional discrimination, or by providing circumstantial evidence of disparate treatment on a discriminatory basis. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 n.4 (6th Cir. 1992) (holding that a prima facie case of discrimination can be stated under the ADEA by presenting either direct evidence of intentional age discrimination or indirect evidence of disparate treatment on the basis of age, but finding no discrimination because the employer successfully presented a legitimate, nondiscriminatory and nonpretextual reason for the discharge); *Town*, 568 N.W.2d at 67-68 (finding no discrimination under the Elliot-Larsen Act where the employee failed to present direct or indirect evidence of age discrimination).

Hein focuses his argument on what he claims to be "direct evidence" of discrimination. He only tangentially refers to evidence of disparate treatment. Nevertheless, we will address both methods of proving discrimination.

### 1.   *Intentional discrimination*

In order for a plaintiff to state a prima facie case of intentional age or weight discrimination, he must present credible, direct evidence of wrongful discrimination. *See Mitchell*, 964 F.2d at 582 n.4; *Town*, 568 N.W.2d at 67-68. This credible and direct evidence cannot be based on rumors, conclusory allegations, or subjective beliefs. *See Mitchell*, 964 F.2d at 585 (rejecting the plaintiff's affidavit as evidence of age discrimination where it was comprised of the plaintiff's subjective beliefs). Nor can it be based on vague, ambiguous, or isolated remarks. *See Phelps v. Yale Sec., Inc.*, 986 F.2d 1020 (6th Cir.1993) (finding no prima facie case of age discrimination, even though the plaintiff's supervisor twice stated that the plaintiff was too old to continue at her prior secretarial position, because these were only isolated and ambiguous comments). Finally, the evidence must establish

favor. This appeal followed the denial of Hein's motion for a rehearing.

## II.  ANALYSIS

### A.  Standard of review

We review de novo the district court's grant of summary judgment. *See*, *e.g.*, *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

### B.  Public policy claim

Hein first argues that his termination violated public policy. Under Michigan law, an employee may have a cause of action against his employer when his termination is contrary to clearly articulated public policy. *See Suchodolski v. Michigan Consol. Gas Co.*, 316 N.W.2d 710, 711 (Mich. 1982) (holding that even in an at-will employment relationship, "some grounds for discharging an employee are so contrary to public policy as to be actionable").

An employee has a valid public policy claim under Michigan law if he was fired because his employer requested that he break the law, but he failed or refused to do so. *See Garavaglia v. Centra, Inc.*, 536 N.W.2d 805, 808 (Mich. Ct. App. 1995) (providing three situations where a termination can give rise to a valid public policy claim, including where the employee refused to break the law). Hein argues that he

---

*Roush v. Weastec, Inc.*, 96 F.3d 840, 844 (6th Cir. 1996) (holding that a plaintiff's temporary kidney condition was not substantially limiting and, therefore, not a disability under the ADA). Here, it was Hein's voluntary failure to obtain medication, rather than the physical condition of hypertension itself, that was the direct cause of his temporary inability to work. Accordingly, Hein's hypertension does not substantially limit his major life abilities such that he has a claim under either the ADA or the PDCRA.

The essence of Hein's claim is captured in the following argument in his brief: "The bottom line is that at the time he was fired, by no fault of his own, plaintiff did not have his medication." But it basically *was* his own fault. Hein concedes in his brief "that it is his responsibility to obtain his medication," and that "he made no attempt to obtain an earlier appointment or temporary refill from one of the other two doctors in the office." Knowing that he must be continuously medicated in order to perform his job as a truck driver, it was his responsibility to not wait until the last minute to obtain refills of his medicine. As pointed out in AAP's brief, Ludwinski "did not hide Hein's medication, or prevent him from getting an appointment or a short supply," and "did not even know Hein had high blood pressure until July 7, 1997 at approximately 3:00 p.m. when he was required to resolve the issue of who would take the Cleveland run." Consequently, Hein has failed to establish a valid disability claim.

### D.  Age and weight discrimination claims

Finally, Hein charges AAP and Ludwinski with age discrimination under the ADEA and with age and weight discrimination under the Elliot-Larsen Act. A plaintiff seeking recovery under both acts must bear the burden of proving a prima facie case of discrimination. *See Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1390 (6th Cir. 1993) (holding that the complainant must carry the initial burden of establishing a prima facie case of discrimination under the ADEA); *Town v. Michigan Bell Tel. Co.*, 568

did not make the July 8, 1997 delivery because he refused to disobey the Federal Motor Carrier Safety Regulations prohibiting drivers with serious hypertension from driving while unmedicated. *See* 49 C.F.R. § 391.41. According to Hein, AAP and Ludwinski violated public policy when they fired him for refusing to drive on that date.

Ludwinski, however, never demanded that Hein violate the law by driving without his blood-pressure medication. Instead, Ludwinski told Hein to make his assigned delivery, an assignment made five days in advance of the delivery date. During this time, Hein did not attempt to meet with another doctor or obtain a temporary refill of his blood-pressure medication. Yet Hein, by his own admission, had the responsibility to keep himself medicated. It was thus Hein, rather than his employer, who placed himself in the position of being forced to either violate the federal motor carrier safety laws or abandon his work duties. Accordingly, we find that the public policy exception to the at-will employment doctrine is inapplicable under these circumstances.

## C.   Disability discrimination claim

Hein next alleges disability discrimination under the ADA and the PDCRA. The federal ADA and the Michigan PDCRA each require an individual seeking redress to show that he has an impairment that substantially limits a major life activity. *See Gilday v. Mecosta County*, 124 F.3d 760, 762 (6th Cir. 1997) (finding no disability under the ADA where the plaintiff's diabetes, which was controlled by medication, did not substantially impair any of his major life activities); *Chmielewski v. Xermac, Inc.*, 580 N.W.2d 817, 823 (Mich. 1998) (holding that a plaintiff who received a liver transplant, and whose anti-rejection medication allowed him to live a normal life, did not have a disability). Hein's hypertension, therefore, does not rise to the level of a disability as defined under those statutes.

The Supreme Court has expressly held that courts must evaluate a person with high blood pressure in his medicated state in order to determine whether he is disabled under the

ADA. *See Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516 (1999) (holding that Murphy, a truck driver, was not disabled under the ADA because his hypertension did not substantially limit his major life activities when he was medicated). Michigan law is similar in requiring claimants to be evaluated in their medicated, rather than unmedicated, condition. *See Chmielewski*, 580 N.W.2d at 824.

Hein tries to distinguish his situation from *Murphy* and *Chmielewski* by noting that both Murphy and Chmielewski were on medication when fired. In contrast, Hein argues that AAP and Ludwinski prevented him from taking his blood-pressure medication by demanding that he go out on the road at a time when he had no refill. Hein therefore argues that his unmedicated state should be used to evaluate whether he is protected by the ADA and the PDCRA.

Hein's distinction is unpersuasive. In determining that Murphy should be evaluated in his medicated state, the Supreme Court relied on another case, *Sutton v. United Airlines*, 527 U.S. 471 (1999) (holding that corrective and mitigating measures should be used to determine whether the myopic job applicants fell within the protection of the ADA). The Court expressly noted in *Sutton* that "[t]he use or nonuse of a corrective device does not determine whether an individual is disabled; that determination depends on whether the limitations an individual with an impairment actually faces are in fact substantially limiting." *Id*. at 488. Similarly, *Chmielewski* expressly declined to "head down [the] slippery slope" of considering individuals with treatable hypertension disabled on the sole basis that they were substantially limited in their unmedicated state. *Chmielewski,* 580 N.W.2d at 824.

In the present case, Hein successfully performed his duties with the aid of his blood-pressure medication. He admitted that, while on medication, he functions normally and has no problems "whatsoever." His hypertensive condition did not substantially limit him from working. Indeed, this court has held that short-term temporary restrictions on major life activities are generally not disabilities under the ADA. *See*