NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0819n.06

Case No. 14-1074

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Oct 29, 2014
DEBORAH S. HUNT, Clerk

MILTON SPOKOJNY,                    )
                                    )
    Plaintiff-Appellant,            )
                                    )
                                    )   ON APPEAL FROM THE
v.                                  )   UNITED STATES DISTRICT
                                    )   COURT FOR THE EASTERN
HILLIARD HAMPTON; CITY OF INKSTER,  )   DISTRICT OF MICHIGAN
                                    )
    Defendants-Appellees.           )
                                    )   O P I N I O N
                                    )

BEFORE: DAUGHTREY, McKEAGUE, and WHITE, Circuit Judges.

**McKEAGUE, Circuit Judge.** For twenty-nine years, Milton Spokojny, a white man, worked under contract as the City Attorney for Inkster, Michigan. But in 2011, the City instead chose the Allen Brothers Law Firm to perform its legal work. Why did the City pick Allen Brothers over Spokojny? The City says it's because Allen Brothers offered more services for less money. Spokojny says the City preferred Allen Brothers because it has an African-American attorney. Because Spokojny has not produced evidence to prove race discrimination, we affirm the district court's grant of summary judgment to the City and its Mayor.

**I.**

Inkster, Michigan, a suburb of Detroit, is made up of over 73% African-Americans. As City Attorney, Spokojny reported to the seven-person City Council. Defendant Hilliard

Hampton, an African-American man, has sat on the Council since 1992—first as a Councilman and now as Inkster's mayor.

On February 7, 2011, the Council unanimously authorized the City's Administration to develop Requests for Proposals ("RFPs") for "all current service contracts"—including the City Attorney contract—purportedly to find more qualified and affordable services for the City. An email, which contained a "Special Notice" of "Minority Business Participation" and "Women-Owned Business Participation," went out to potential bidders.

Proposals came in, including one from Allen Brothers, PLLC, a seven-person law firm based in Detroit. The proposal designated David Jones, the Firm's only African-American attorney, as the point person. Allen Brothers had represented a dozen municipalities in the past decade and had attorneys with a broad range of expertise. The Firm promised to cap its yearly fees at $135,000—less than the $139,091 to $143,961 per year that Spokojny charged under his contract—for doing the same work as Spokojny. Spokojny, who understood that the bid process could mean that he would lose his contract, also submitted a proposal.

On June 27, 2011, the City Council interviewed Allen Brothers and Spokojny. Accounts of the interviews vary. Some Councilmembers testified that it was clear Spokojny did not have the City's best interests in mind—and that he instead acted selfish throughout the RFP process. Spokojny, on the other hand, claims the process was rigged against him from the beginning. As support, he points to former City Manager Ann Capela's declaration that she was "personally directed by Mayor Hampton to work with David Jones to ensure that David Jones would be the next City Attorney," and to the fact that Allen Brothers somehow obtained his 1099 income statements to include in their bid. Spokojny testified that he was not even invited to interview but just happened to have been there on the night of the interviews.

Three weeks later, the Council voted 5–2 to award the City Attorney contract to Allen Brothers. In choosing Allen Brothers over Spokojny, the Council cited Allen Brothers' lower cost, greater depth of legal knowledge, and broader range of experience. Some Councilmembers supported their vote with claims that Spokojny was so comfortable in his job that he would fall asleep during Council meetings and that they did not trust him to perform the City's legal work.

Spokojny counters that the City picked Allen Brothers because the Mayor and other Councilmembers favor African Americans over non-blacks. Spokojny submitted sworn declarations before the district court, including of former City Manager Capela, who attested that during her tenure from 2008 until 2011 Mayor Hampton viewed all City of Inkster business and employees through a "prism" of race and "insisted" on "awarding all City service contracts to African-American" individuals or companies. Louise Kolberg, a City Councilwoman from 2002 through 2003, stated in her sworn declaration that she heard Mayor Hampton state to a group of Councilmembers that he wanted minority-run businesses to perform the City's contracts. And James Richardson, an African-American man, declared that the Mayor could not understand how an African-American man could support a white woman for public office. Spokojny also points to several past race-related lawsuits against the City and an instance where the City awarded a contract to an African-American man who was the third lowest bidder, claiming that these too show a pattern of discrimination. Spokojny finally cites the now-defunct "Equal Opportunity for Local, Minority and Female Business Enterprises" City Ordinance as support. R. 59-5; *see* Mich. Const., art. 1, § 26(2); 2007 WL 1138859 at *7, No. 7202 Op. Att'y Gen. 32, 40 (declaring that the City of Grand Rapids' construction policy, which provided bid discounts on the basis of race and sex, did not comport with Article I, Section 26 of the Michigan Constitution, which

prohibits granting preferential treatment on the basis of, among others, race and sex); *see also* Appellant Br. 9 n.23, 28 (acknowledging that the Ordinance is now unconstitutional).

Spokojny brought this action against Mayor Hampton and the City of Inkster, alleging intentional race discrimination under 42 U.S.C. § 1981 and Article I, Section 26(2) of the Michigan Constitution (as well as breach of contract and retaliation, neither of which are before us). Hampton and the City moved for summary judgment, which the district court granted on December 19, 2013. The district court then denied Spokojny's Motion for Reconsideration. Spokojny appealed, and we now affirm.

## II.

Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867–68 (6th Cir. 2001). To prevail on his section 1981 claim, Spokojny must prove, either with direct or circumstantial evidence, that the City and Hampton intentionally discriminated against him when awarding its City Attorney contract to Allen Brothers. *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006). We view the facts in Spokojny's favor and review *de novo* the grant of summary judgment against him. *Id.* at 357.

## A.

Spokojny claims to have "direct evidence" of intentional discrimination for both Defendants. Direct evidence requires no "inferences in order to conclude that the challenged employment action was motivated" by race. *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). It is not enough, therefore, that the defendant is *generally* predisposed to discriminate on the basis of race; to be direct evidence, the evidence must prove that "the employer acted on that predisposition" in this particular case without the use of any inferences. *Hein v. All America*

*Plywood Co.*, 232 F.3d 482, 488 (6th Cir. 2000). Properly defined, Spokojny has no direct evidence for either defendant.

*Mayor Hampton*. Spokojny points to Mayor Hampton's alleged statements indicating that he favored African-Americans over whites as purported direct evidence. The district court dismissed most of this evidence as inadmissible hearsay, inadmissible unsworn statements, and inadmissible testimony about the mindset of others. That was incorrect. As Spokojny points out, *see* Appellant Br. 20–22, and Defendants do not dispute, these statements may be used at summary judgment under 28 U.S.C. § 1746 and at trial as party-opponent statements under Fed. R. Evid. 801(d)(2). Therefore, we will consider this evidence.

Yet Hampton's statements are not *direct* evidence because they require inferences to come to the conclusion that Hampton discriminated against Spokojny. His statements—which range from comments of disbelief that an African-American man could support a white woman for public office to remarks that he wishes the City would have more African-American contractors—are all unconnected to this particular contract. At most, then, his statements show that he generally favored African-Americans over whites, and someone who favors one race *generally* did not necessarily act on race with respect to *this contract*. *See Hein*, 232 F.3d at 488; *see also Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 550 (6th Cir. 2004). Spokojny thus does not have direct evidence as to Mayor Hampton.

*City of Inkster*. Spokojny puts great weight on the "Equal Opportunity for Local, Minority and Female Business Enterprises" Ordinance, claiming it constitutes direct evidence of discrimination by the City. But Spokojny does not explain how it operated generally—or, more importantly, *that it in fact operated here*. Rather, the Council's voting members knew the Ordinance was no longer in effect because it is unconstitutional. And Spokojny admits as much.

Appellant Br. 9 n.23, 28.  Therefore, at the least, the factfinder would need to draw inferences that the Council followed the defunct and unconstitutional Ordinance in this particular case—meaning it is not direct evidence.

Thus, Spokojny has presented no direct evidence to support his section 1981 claims.

**B.**

Spokojny tries next to prove intentional discrimination using circumstantial evidence.  To do so, he must establish a prima facie case of discrimination under the *McDonnell-Douglas* burden-shifting standard.  *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008).  We will assume he has done so without deciding the issue.  The burden then shifts to Defendants, who have met their burden by offering a legitimate, non-discriminatory reason for choosing Allen Brothers over Spokojny: Allen Brothers "presented an overwhelmingly more capable profile at a lower price" than Spokojny.  Appellees' Br. at 31.  The burden then shifts back to Spokojny to prove that this reason constituted mere pretext for discrimination.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508 (1993).  He may do so by showing that the City's reason (1) had no basis in fact; (2) did not actually motivate its decision; or (3) was insufficient to justify its decision.  *Carter v. Univ. of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003).

Spokojny cannot overcome Defendants' legitimate, non-discriminatory reason for awarding its City Attorney contract to Allen Brothers.  *First*, Defendants' proffered reason has a sufficient basis in fact.  Its seven-person firm could cover a wider range of legal issues than Spokojny's one-person shop, and it came with a more diversified background because it had represented a dozen cities, the state's largest healthcare provider, several banking institutions, and Wayne State University—all in the past decade.  It did not have the trust issues that some Councilmembers believed Spokojny had through his alleged leaking litigation documents to his

friend, refusal to carry out the City's command, and falling asleep on the job. And it was less expensive because it promised to cap its fees at $135,000—several thousand dollars less than Spokojny's prior few years—for the same work as Spokojny. Spokojny was *not* the lowest bidder because he promised no such cap. And the fact that Allen Brothers has since exceeded the cap does not prove pretext because the City now uses Allen Brothers' litigation experience rather than farming out its litigation work as it did under Spokojny. Going with the more expert, more diversified, more trustworthy, and less expensive firm makes good business sense—and it is not pretext for race discrimination.

*Second*, Spokojny presents no evidence that Defendants' proffered reason did not motivate their decision to choose Allen Brothers over Spokojny. Every Councilmember that voted for Allen Brothers claimed it was because Allen Brothers provided more for less.

*Third*, the City's reason sufficiently justified its decision. From the beginning of the RFP process, the City sought better contracts at lower prices. Allen Brothers provided that opportunity, justifying the City's decision to pick Allen Brothers as City Attorney. Spokojny therefore has failed to create a genuine issue of fact that the Defendants' proffered reason lacked a factual basis or did not actually motivate its decision, and the Defendants' legitimate, nondiscriminatory reason stands. This was not pretext.

Spokojny sees it differently. He responds by directing us back to his purported direct evidence and arguing that it establishes pretext. Not so, for either Defendant.

*Mayor Hampton*. Mayor Hampton's alleged favoritism of African-Americans is remote in time and unrelated to the decision to choose Allen Brothers over Spokojny—not enough to establish pretext. *See Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 287 (6th Cir. 2012). Ditto for the Mayor's alleged desire to award contracts on the basis of race. It is unconnected to

this particular contract, and it occurred in 2002 or 2003—eight or more years before the Council choose Allen Brothers over Spokojny—making it too remote in time to defeat summary judgment. *See Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993) (holding that a decisionmaker's comments that the plaintiff was "too old" to hold the job—made one year before the plaintiff's layoff—was insufficient to defeat summary judgment). Similarly, the Mayor's alleged insistence on "awarding all City service contracts to African-American" individuals or companies is too conclusory to create a genuine issue of material fact. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Nix v. O'Malley*, 160 F.3d 343, 347 (6th Cir. 1998) ("The non-moving party cannot rely on conclusory allegations to counter a motion for summary judgment.").

Ann Capela's Declaration stating that Hampton "personally directed" her "to ensure that David Jones would be the next City Attorney," Reply Br. 5, is ambiguous and thus does not create a genuine issue of fact. *See Phelps*, 986 F.2d at 1026. *Why* did Hampton allegedly preordain David Jones as the next City Attorney? Was it because David Jones is African-American? Or was it because Jones' Firm offered more services at a lower cost than Spokojny? Capela's statement does not make either of those alternatives more likely than the other. Taking her statement as true, race may have played into Hampton's alleged preference for Jones—or it may not have. This statement thus does not change the lack-of-pretext conclusion.

Nor does all of the evidence, taken together, establish pretext. *See, e.g.*, *Blizzard*, 698 F.3d at 287 (holding that three separate statements that were individually too ambiguous and unrelated did not, in combination, establish pretext); *see also Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009) ("[S]tatements by decisionmakers unrelated to the decisional process itself cannot suffice to satisfy the plaintiff's burden."). Spokojny's effort to collect conclusory,

unrelated, remote-in-time, and ambiguous remarks does not add up to a showing of pretext. Summary judgment in Hampton's favor was proper.

*City of Inkster.* Spokojny points to several City "policies or customs," but none establishes pretext. *First*, the "policy" to pick Allen Brothers over Spokojny does not prove pretext because Spokojny has not produced evidence that Mayor Hampton or *any* other Councilmember acted with an improper motive. And a lack of proof for any individual means a lack of proof for the collective. *See Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 262–63 (6th Cir. 2006).

*Second*, the defunct "Equal Opportunity" Ordinance does not show pretext. Simply put, no evidence shows that the Council relied on the unconstitutional Ordinance when voting for City Attorney. This hole in the record—coupled with Spokojny's burden to prove discrimination—means summary judgment is proper. Fed. R. Civ. P. 56(c)(1)(B) ("[A party may support its summary judgment motion by showing] that an adverse party cannot produce admissible evidence to support the fact."). Spokojny has no evidence to show, as he must, "that [his] particular injury was incurred *because* of the execution of [the Ordinance]." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996).

Spokojny's effort to create a genuine dispute of fact as to the Ordinance fails. He points to Councilman Crump's belief that the Ordinance still bound the City. But (1) Crump contradicted himself, *see Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999), and (2) even if Crump himself was "improperly motivated," his vote did not "supply the deciding margin." *Scarbrough*, 470 F.3d at 262. The Ordinance does not create a genuine issue of material fact.

*Third*, the RFP email sent to qualified potential bidders, which listed "Minority Business Participation" and "Women-Owned Business Participation" in the "Special Notice" section, likewise fails to establish pretext. Putting minority and women-owned firms on notice of a possible job opening is a far cry from intentionally discriminating on the basis of race. And Spokojny makes no direct connection between the email and the Ordinance—much less between the email and the Council's decision to pick Allen Brothers in the RFP process. The email does not show that the Ordinance was followed, and it does not show pretext.

*Fourth* and finally, the alleged "custom" of discrimination is insufficient to show pretext. Spokojny, without citing the record, refers to "a decades-long tradition of preferential treatment for black contractors, appointees and employees" as the "custom" responsible for discriminating against him. Appellant Br. 29. To prevail on this theory, Spokojny must prove that the custom of discrimination is "so permanent and well settled as to [have] the force of law." *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). One successful lawsuit and a few offhand remarks about different sectors of the City do not establish a "legal institution" that permeates all City decisions. *See Doe*, 103 F.3d at 507–08.

In the end, Spokojny has failed to present sufficient evidence that Defendants' nondiscriminatory reason for choosing Allen Brothers was pretextual. Summary judgment for Defendants on the section 1981 claims was proper.

**III.**

Spokojny repackages this insufficient evidence as a mixed-motive claim. *See* Appellant Br. 24–25; Reply Br. 11. Assuming that Spokojny is entitled to a mixed-motive analysis by virtue of having raised it in response to Defendants' motion for summary judgment, *see Ondricko v. MGM Detroit, LLC*, 689 F.3d 642, 649 (6th Cir. 2012), he cannot show that

discrimination was a motivating factor by using a combination of remote, conclusory, isolated, unrelated, and ambiguous statements.  All this evidence together is insufficient to create a genuine issue of material fact.

## IV.

Spokojny's state constitutional claims also fail.  He relies on the same evidence to allege that the City "grant[ed] preferential treatment" to Allen Brothers "on the basis of race."  Mich. Const. art. I, § 26(2).  But no genuine issue of fact exists on this issue: No evidence, direct or circumstantial, supports his claim of intentional discrimination.

## V.

For these reasons, we AFFIRM.