NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0457n.06

No. 22-1069

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 15, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| NAYONN GRAY, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| AUTOZONERS, LLC, a foreign profit | ) | MICHIGAN |
| corporation; NICHOLAS ISLES, | ) | |
| Defendants-Appellees. | ) | OPINION |
| | ) | |

Before: GIBBONS, GRIFFIN, and STRANCH, Circuit Judges.

**PER CURIAM.** Mr. Nayonn Gray, an African American man, alleges that he was discriminated against when AutoZone assistant store manager Nicholas Isles refused to provide a fourth exchange of a battery that was covered by a one-year warranty. Gray filed a complaint against both Gray and AutoZoners, LLC, alleging racial discrimination under state and federal law, and negligent supervision and intentional infliction of emotional distress in violation of Michigan common law. The district court granted Defendants' motion for summary judgment in full. Gray now appeals the district court's judgment as to his discrimination and intentional infliction of emotional distress claims.

For the reasons below, we **AFFIRM.**

## I. BACKGROUND

On May 9, 2020, Gray purchased a 75-VL Valucraft battery from an AutoZone location in Lincoln Park, Michigan. The battery was protected by a one-year warranty that excluded damage

caused by "misuse, abuse, other faulty parts, improper installation or off-road, commercial or marine use," and did not specify the number of exchanges that a customer could request. Between May and July, Gray returned to the store three times to request new batteries under the warranty exchange policy. Each time, he received a new battery.

On Gray's July 22 visit to exchange the battery for the third time, Gray was helped by AutoZone employee Darlene Garcia, who is biracial and part African-American. Garcia tested Gray's battery, found that it held a charge, and advised Gray that she would not exchange the battery because it was not defective. In response, Gray "immediately" accused Garcia of refusing to exchange the battery because of his race; Garcia also heard Gray say that she "had a mouth on [her]," and call her "a Mexican b****." Another store employee who overheard the commotion stepped in and granted Gray's warranty exchange, providing him with a new battery.

On August 7, Gray returned to the store with his friend, Demetrius Stone, to request a fourth warranty exchange. Gray approached Garcia for assistance, but Garcia "did not wish to assist [Gray]" because she did not want to be harassed or "baselessly accused of race discrimination again." Garcia asked Isles to assist Gray instead. Isles was aware of Garcia's negative experience with Gray and agreed to assist Gray in her place.

After reviewing Gray's warranty history of three exchanges in three months, Isles explained that he would not grant an additional warranty exchange because he thought that the history of exchanges indicated either that the battery was functional but not performing because Gray had a different problem with his vehicle, or that the battery was defective because Gray misused it. Isles suggested that Gray might instead have a problem with his vehicle's alternator, or that he might have installed an "aftermarket sound system[]" that the battery could not support. In his deposition, Isles explained that he thought that Gray might have installed an aftermarket

sound system because it was "pretty common" for the store's customer base to do so. When asked to describe the customer base, Gray characterized it as working class and largely "[B]lack and Hispanic."

Isles then offered to try to charge Gray's battery and honor the warranty with a new battery if it did not function, but Gray did not want "any type of service other than the requested exchange." Gray then accused Isles of discriminating against him because of his race and AutoZone of discriminatory business practices. Isles placed the battery on the charger, and circular argument ensued over the course of two or three hours.

Gray alleges that at some point during the argument, Isles accused Gray of using the battery to make methamphetamines. Isles "vehemently" contests this allegation, arguing that it was in fact either Gray or Stone who accused Isles of making meth. After this comment, Gray left the store briefly, then returned and pulled out his phone to record his conversation with Isles, saying that he wanted Isles on video saying that he could not return the battery. Isles responded by telling Gray his name while pointing at his nametag, then stating: "Put me on Facebook, the white power oppressor, man."

Although Isles and another employee testified that the battery was fully charged when they returned it to Gray, Gray maintains that it still did not work in his car. Gray came back the next day, returned the battery, and bought a different type of battery and an alternator.

As part of an AutoZone investigation, Isles acknowledged that he was frustrated during his interaction with Gray, that he "should have been calmer," and that his recorded statement "was combative," but he denied that it expressed racial animus. Isles instead explained that his comment was a "deeply sarcastic" reaction to Gray's accusations of racism, not an admission of racism.

Gray's operative complaint against Defendants Isles and AutoZone alleges four claims: (1) denial of equal rights, in violation of 42 U.S.C. § 1981; (2) denial of public accommodation, in violation of Michigan's Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101, *et seq.*; (3) negligent supervision under Michigan common law; and (4) intentional infliction of emotional distress (IIED) under Michigan common law. Defendants separately moved for summary judgment. The district court granted the motions in full, holding that Gray: failed to establish a claim under § 1981 or the ELCRA; abandoned his negligent supervision claim; and failed to establish extreme and outrageous conduct or severe emotional distress sufficient to establish an IIED claim. Gray appeals the grant of summary judgment only as to his § 1981 claim, ELCRA claim, and intentional infliction of emotional distress claim.

For the reasons below, we affirm the district court's judgment in full.

## II.     STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo, drawing all reasonable inferences in favor of the nonmoving party. *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit," and a genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "At the summary judgment stage, the moving party bears the initial burden of identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Johnson v. Ford Motor Co.*, 13 F.4th 493, 502 (6th Cir. 2021) (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389-90 (6th Cir. 2008)). Once the moving party has met its burden, the burden shifts to the non-moving

party to demonstrate "specific facts showing that there is a genuine issue for trial," although the evidence need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(e) (1967) (amended 2010)).

## III.   ANALYSIS

### A.    Discrimination Claims: 42 U.S.C. § 1981 and Elliott-Larsen Civil Rights Act

"Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts with both public and private actors." *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 867-68 (6th Cir. 2001). The statute specifically protects against discrimination in "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). To prevail on a § 1981 claim, a plaintiff must establish: (1) that "he belongs to an identifiable class of persons who are subject to discrimination based on their race;" (2) that "the defendant intended to discriminate against him based on his race;" and (3) that "the defendant's discriminatory conduct abridged his right to contract." *Amini v. Oberlin Coll*., 440 F.3d 350, 358 (6th Cir. 2006). Similarly, Michigan's ELCRA provides that, except when permitted by law, a person shall not "[d]eny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status." Mich. Comp. Laws § 37.2302(a).

This case turns on whether Gray can establish that Defendants intended to discriminate against him. Under both statutes, this element can be established either by direct evidence or circumstantial evidence. *Amini v. Oberlin Coll*., 440 F.3d at 358; *In re Rodriguez*, 487 F.3d 1001, 1007 (6th Cir. 2007) (citing *DeBrow v. Century 21 Great Lakes, Inc.*, 620 N.W.2d 836, 838 (Mich. 2001) (per curiam)). When a plaintiff seeks to prove intentional discrimination through

circumstantial evidence, courts generally evaluate § 1981 and ELCRA discrimination claims under the same standard as Title VII of the Civil Rights Act of 1964. *See Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004) (1981 claims); *Perry v. McGinnis*, 209 F.3d 597, 602 n.3 (6th Cir. 2000) (ELCRA claims). But unlike Title VII, § 1981 and the ELCRA both require plaintiff to establish that race is a "but-for" cause of the injury. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1013 (2020); *Hecht v Nat'l Heritage Acads., Inc.*, 886 N.W.2d 135, 146 (Mich. 2016).

### 1. Direct Evidence

Direct evidence is evidence that, if believed, requires the conclusion that unlawful discrimination was the but-for cause of an adverse action. *Amini*, 440 F.3d 350, 359. "In other words: 'Direct evidence is evidence that proves the existence of a fact without requiring any inferences.'" *Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 530 (6th Cir. 2014) (quoting *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004)). Racially insensitive statements constitute direct evidence of discrimination "only if they have some connection" to the adverse action alleged. *Griffin v. Finkbeiner*, 689 F.3d 584, 595 (6th Cir. 2012).

Gray argues that Isles's "white power oppressor" statement is direct evidence of racially discriminatory intent, relying on our decisions finding direct evidence of discrimination based on use of racial epithets and explicit expressions of discriminatory motivation. *See DiCarlo v. Potter*, 358 F.3d 408, 417 (6th Cir. 2004), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) (finding direct evidence of discrimination where the defendant called the plaintiff a slur for Italian-Americans three weeks before terminating him from his job); *Scheick*, 766 F.3d at 531-32 (finding direct evidence that age discrimination was the but-for reason for

termination where a board member told an employee that the board wanted "someone younger" instead).

Unlike *Dicarlo*, however, Isles did not use racial epithets, which Gray admitted in deposition testimony. And before Isles made the "white power oppressor" comment, he had already stated that he would deny an exchange because the battery was either misused or not defective and was therefore not covered by the warranty. Where statements are unconnected to action in a particular contract, they are not direct evidence of discriminatory intent with respect to that contract. *See Spokojny v. Hampton*, 589 F. App'x 774, 778 (6th Cir. 2014) (City officials' statements in favor of awarding city contracts to minority-run businesses were not direct evidence of discrimination against a white attorney because they were unconnected to his contract).

Isles's comments were neither directly expressive of racial animus nor directly tied to Isles' decision to deny the warranty exchange. Accordingly, Gray fails to establish a discrimination claim based on direct evidence.

### 2.    Circumstantial Evidence

To establish a § 1981 race discrimination claim relying on circumstantial evidence, a plaintiff must meet the burden-shifting standard of proof for Title VII cases established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Christian*, 252 F.3d at 868. *McDonnell Douglas* requires a plaintiff to "first establish a prima facie claim of discrimination*." Id.* If Gray can establish a prima facie case, the burden then shifts to the Defendants to produce a legitimate, non-discriminatory reason for the adverse treatment. *Id.* If the Defendants satisfy this burden, the presumption of discrimination disappears, and Gray must establish that the nondiscriminatory reason proffered by the Defendants is a pretext for discrimination. *Id.* Throughout this framework,

Gray bears the ultimate burden of proving by a preponderance of the evidence that he suffered illegal discrimination. *Id.*

To establish a prima facie case of discrimination in a commercial establishment, plaintiffs must show that: (1) they are a member of a protected class; (2) they made themselves "available to receive and pay for services ordinarily provided by the defendant to all members of the public in the manner in which they are ordinarily provided; and" (3) they "did not enjoy the privileges and benefits of the contract[] . . . under factual circumstances which rationally support an inference of unlawful discrimination." *Id.* at 871 (quoting *Callwood v. Dave & Buster's, Inc.*, 98 F.Supp.2d 694, 705 (D.Md. 2000)). It is undisputed that Gray meets the first two prongs of the three-part prima facie test. The pertinent question is whether Gray "did not enjoy the privileges and benefits" of the warranty contract, under circumstances that rationally support an inference of unlawful discrimination. A plaintiff can fulfill this element either by establishing (a) that he was deprived of services while similarly situated persons outside the protected class were not deprived of those services, or (b) that he received services in a "markedly hostile manner" that "a reasonable person would find objectively discriminatory." *Id.* at 872.

To prevail on a similarly situated person theory, a plaintiff must identify a comparator person "of a different race, who was similarly situated to him, but who was treated better" by a defendant. *Smith v. City of Toledo*, 13 F.4th 508, 515 (6th Cir. 2021). Alternatively, a "markedly hostile" treatment theory "account[s] for situations in the commercial establishment context in which a plaintiff cannot identify other similarly situated persons," and considers factors including whether service is so contrary to the establishment's financial interests, so far outside of widely acceptable business norms, and so arbitrary on its face that it supports a rational inference of discrimination. *Christian*, 252 F.3d at 871.

Gray argues that he can establish discriminatory intent under either the "similarly situated" or the "markedly hostile treatment" standards. But both arguments raise contested claims that are better resolved in the "pretext" stage of the *McDonnell Douglas* test. For the purposes of this analysis only, therefore, we presume Gray's prima facie case based on circumstantial evidence.

Thus, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for their actions. *Christian*, 252 F.3d at 879. Defendants assert that Gray was denied a fourth battery exchange based on AutoZone's warranty policy. This satisfies their burden. The presumption of discrimination therefore disappears, and the burden shifts back to Gray to prove by a preponderance of the evidence that the Defendants' stated reasons are a pretext for racial discrimination. *Christian*, 252 F.3d at 879. He may establish pretext by showing that Defendants' stated reasons have no basis in fact, are not the actual reasons, or are insufficient to explain their actions. *Id.*

Gray argues that Defendants' stated reason for denying the exchange has no basis in fact.[1] He contends that: Defendants' explanation conflicts with the warranty policy, which does not limit the number of exchanges during the warranty period; customers "including white customers" frequently required multiple warranty exchanges in short time periods; there were "many occasions" when customers requested exchanges; and, store employees generally made exchanges even when batteries tested as functional. Gray also argues that a reasonable jury could infer an unlawful motive from the "white power oppressor" comment and Gray's alleged statements about drugs and aftermarket sound systems.

---

[1] Gray also argues on appeal that Defendants' stated reason is insufficient to explain Defendants' actions. But Gray did not present that argument before the district court. He therefore cannot raise it now. *See Bormuth v. Cnty. of Jackson*, 870 F.3d 494, 501 (6th Cir. 2017) (en banc).

The record includes general testimony that customers could receive more than one exchange under the warranty, and that there was a gray area in which customers could insist on receiving a new battery even though the battery was functional. But no record evidence shows that any employee granted a customer of any race a fourth battery exchange within a three month period, particularly when the current battery tested functional and could hold a charge. And regardless of any informal policy generally allowing exchanges, the written policy guarantees replacement of only non-functional batteries, and its plain language excludes damage caused by misuse or abuse. Here, Isles reasonably concluded from the repeated exchanges in Gray's warranty history that either the battery was not the issue and something else was wrong with Gray's car, or that the battery was repeatedly failing because of misuse. Further, Isles's decision to deny the warranty exchange was in AutoZone's financial interests: AutoZone loses money on a battery that is returned under a warranty because exchanged batteries cannot be resold as new even if they are not defective.

In sum, Defendants have pointed to evidence that the written policy excluded exchanges of functional batteries or batteries damaged by misuse; that Isles had a reasonable basis for his belief that there was something else wrong with Gray's car or that the battery had been misused; that the battery tested functional; and that it was in AutoZone's financial interest not to allow a fourth exchange of the battery. This evidence provides a factual basis for Isles's denial of the exchange.

Some of Isles's comments, if true, suggest troubling stereotypes about African Americans. But even viewing the record in the light most favorable to Gray, a reasonable jury could not find that Defendants' proffered reason for the warranty denial was not based in fact. At most, a reasonable jury could conclude only that Isles would have refused to provide Gray a fourth battery

regardless of any such stereotypes. This is insufficient to establish that race discrimination was the "but-for" cause of Isles's denial of the warranty exchange. The district court properly granted Defendants summary judgment with respect to Gray's racial discrimination claims under § 1981 and the ELCRA.

### B. Intentional Infliction of Emotional Distress Claim

To establish a claim of intentional infliction of emotional distress under Michigan law, a plaintiff must prove: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 908 (Mich. 1985). Conduct is extreme and outrageous where it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Graham v. Ford*, 604 N.W.2d 713, 716 (Mich. Ct. App. 1999). "[L]iability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Roberts*, 374 N.W.2d at 909 (quoting Restatement (Second) of Torts § 46 (1965)). Gray has established that Isles's comment was unprofessional and inappropriate. Based on the analysis of Isles's comments above, however, this evidence falls short of "extreme and outrageous" conduct that is utterly intolerable in society.

Even if Gray had established extreme and outrageous conduct, moreover, the law only intervenes when the distress inflicted is so severe that no reasonable person could be expected to endure it. *Id.* at 911. Being upset or angry is insufficient—more than usual outrage is required when a claim is based on emotional injury. Gray testified that he felt embarrassed and degraded, and that he purchased various books to "get [his] mind off of" the incident. But Gray has not sought psychiatric treatment or counseling and admits that he did not know what "white power oppressor" meant at the time of the comment. The impact that Gray alleges is markedly less acute

than distress that "no reasonable person could be expected to endure." Gray has failed to establish that he is experiencing "severe emotional distress" sufficient to make out a claim for intentional infliction of emotional distress under Michigan law. The district court did not err in granting Defendants' motion for summary judgment as to Gray's intentional infliction of emotional distress claim.

## IV. CONCLUSION

Even presuming that Gray sets forth a prima facie case of discrimination, he has failed to establish that Defendants' proffered reason for the warranty denial was pretext for race discrimination. Gray has also failed to establish extreme and outrageous conduct and severe emotional distress that could support a claim for intentional infliction of emotional distress. We therefore **AFFIRM** the district court's decision granting summary judgment.