

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-11-2008

# Lloyd v. Washington

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2907

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Lloyd v. Washington" (2008). *2008 Decisions.* Paper 1032.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1032

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No.  07-2907
_____

KARL BRETT LLOYD,

Appellant

v.

WASHINGTON & JEFFERSON COLLEGE

.


_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 05-cv-00802)
District Judge: Honorable Terrence F. McVerry
_____

Submitted Under Third Circuit LAR 34.1(a)
May 22, 2008

Before: SMITH, HARDIMAN and NYGAARD, *Circuit Judges*.

(Filed: June 11, 2008)

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Karl Brett Lloyd appeals an order of the District Court adopting the Magistrate Judge's Report and Recommendation (R&R) that summary judgment be granted in favor of Washington & Jefferson College (College). We will affirm.

I.

As we write for the parties, we will recount only those facts essential to our decision.

Lloyd was an Associate Professor in the College's Information Technology Leadership (ITL) Department from July 1, 2002 until April 5, 2004. In April 2003, a policy was instituted for all full-time ITL faculty requiring that "they be on campus a minimum of four days per week, for at least four hours per day . . . ." Nevertheless, Lloyd spent only three days per week on campus and worked from home the rest of the week. In January 2004, Lloyd took leave under the Family Medical Leave Act (FMLA) for certain medical problems caused by stress, such as leg pain. During that time, Lloyd advised the College that Dr. Charles Hannon, Chair of the ITL Department, was "the source of his physical problems."

Following Lloyd's return to the College in February and his requests for additional FMLA leave and certain accommodations under the Americans with Disabilities Act (ADA), the College agreed to transfer Lloyd to a non-teaching position in the Information Technology Services (ITS) Department where he could work three days per week under

2

the ITS Director, Daniel Faulk.  The College communicated this offer to Lloyd in a letter which explicitly requested that Lloyd report to Faulk on April 5, 2004, at 9:00 a.m. if he accepted the offer.  After Lloyd failed to report to work in the ITS Department that day, the College considered him to have resigned.

## II.

Lloyd first argues that his "record of impairment," as evidenced by his history of treatment for agoraphobia and panic attacks and receipt of Social Security Disability payments, precludes summary judgment on his ADA claims.  This assertion is an inaccurate statement of law to the extent it suggests that a record of impairment[1] suffices absent substantial limitation on a major life activity.  *See Kelly v. Drexel Univ.*, 94 F.3d 102, 108 (3d Cir. 1996) (observing that this Court cannot regard a medical impairment as a "disability" under the ADA if it does not "substantially limit [a] relevant major life activity"); *see also Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 911 (11th Cir. 1996) (stating that a physical impairment is not enough for purposes of the ADA);

---

[1] We reject Lloyd's contention that his receipt of SSA benefits qualifies as a "record of impairment" under the circumstances of this case.  The definition of disability under the Social Security program differs from the definition of disability under the ADA, such that receipt of Social Security benefits does not necessarily establish that a person is "a qualified individual with a disability" within the meaning of the ADA.  *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 802-805 (1999); *see also* 42 U.S.C. § 12112(a).  Accordingly, we require "[a] plaintiff attempting to prove the existence of a 'record' of disability [to] demonstrate that the recorded impairment is a 'disability' within the meaning of the ADA." *Tice v. Centre Area Transp. Auth.,* 247 F.3d 506, 513 (3d Cir. 2001).  Here, Lloyd has not attempted to show how his receipt of disability benefits from the SSA is equivalent to a "record of impairment" within the ADA framework.

*Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995) (explaining that "[a] physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA").

Perhaps anticipating this flaw in his first argument, Lloyd claims that he is substantially limited in his ability to think and interact with others. A substantial limitation occurs under the ADA only if the person is "[s]ignificantly restricted as to the condition, manner, and duration under which an individual can perform a major life activity as compared to the condition, manner, or duration under which an average person in the general population can perform the same major life activity." 29 C.F.R. § 1630.2(j)(1).

The record demonstrates that Lloyd is not substantially limited in that he was able to work and/or teach on campus three days per week, as well as serve as a councilman for Trafford Borough, engage in family and social outings, and spend hours on weekends working on ITS projects and course development. *See Andreoli v. Gates,* 482 F.3d 641, 651-52 (3d Cir. 2007) (finding that the plaintiff was not limited in the major life activities of "thinking" and "interacting with others," where all of the plaintiff's activities required "thinking, concentrating, and interacting with others."). In sum, the only limitation — if it can properly be classified as such — that Lloyd professed, was his inability to be on campus more than three days per week. In her thorough and lucid R&R, the Magistrate Judge properly concluded that, viewing the evidence in the light most favorable to Lloyd,

4

no reasonable juror could find that he was substantially limited in a major life activity. Furthermore, we agree with the R&R's finding that if Lloyd were, in fact, substantially limited in his ability to think and interact with others, he would not be a qualified person with a disability. *See* 42 U.S.C. § 12112(a); *see also Cleveland*, 526 U.S. at 806. The fact that the ability to think and interact with others are prerequisites for a college professor should be self-evident.[2]

Lloyd next argues that the College interfered with his exercise of FMLA rights by terminating him instead of granting his request to take a medical leave of absence for the Spring term, and genuine issues of material fact preclude summary judgment on the question of whether he exhausted his FMLA leave. The R&R concluded that Lloyd did not have a serious health condition that precluded him from working as an Associate Professor. We agree with this conclusion and find that Lloyd was not eligible for FMLA leave.[3] Even so, the record is clear that Lloyd exhausted any leave to which he might

---

[2] In light of this holding, we need not discuss Lloyd's claim that the College failed to engage in the interactive process. *See Gaul v. Lucent Technologies, Inc.,* 134 F.3d 576, 581 (3d Cir. 1998) (because plaintiff was not a qualified individual with a disability, defendant's "alleged failure to investigate into reasonable accommodation is unimportant.").

[3] We also conclude that Lloyd cannot show that he was prejudiced in the sense that he lost the chance to be reinstated following an FMLA leave of absence. The purpose of the FMLA is to assist employees "who have serious health conditions that prevent them from working for *temporary* periods." 29 U.S.C. § 2601(a)(4) (emphasis added). An FMLA plaintiff must show that, by the time he returned from his allotted 12 weeks of FMLA leave, he would have been "able to perform the essential functions of that position." *See Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 384 (3d Cir. 2002) (citing 29 C.F.R. § 825.214(b)). Lloyd admits that he requested FMLA "leave *to be followed* by

5

have been entitled.  *See* 29 U.S.C. § 2612(a)(1)(D) (stating that the FMLA grants eligible employees the right to take up to twelve work weeks of leave in any twelve-month period if a "serious health condition . . . makes the employee unable to perform the functions of the position of such employee.").  As noted in its brief, the College was not required to designate Lloyd's leave under the FMLA for it to count toward the 12 weeks allowed by statute.  *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 88-89 (2002).  The College's Director of Human Resources stated that Lloyd took 14.2 weeks of paid leave between December 1, 2003 and April 4, 2004, which was 2.2 weeks more than he was entitled to under law.

Finally, Lloyd contends that he presented enough evidence to defeat summary judgment on his discrimination and retaliation claims under the ADA, FMLA, and Pennsylvania Human Relations Act (PHRA).  To make a *prima facie* showing of discrimination, Lloyd must show that, *inter alia*, he suffered an adverse employment action.  *See Jones v. School District of Philadelphia,* 198 F.3d 403 (3d Cir. 1999).  Lloyd complains that the College improperly discharged him instead of granting his request for leave for the Spring 2004 term, to be followed by permission to return to campus only three days per week.  The record is clear, however, that the College made numerous

the implementation of the accommodation" upon his return and that he made no effort to show that he would have been capable of returning to a full-time teaching schedule under Hannon — both of which would have been essential conditions of the job he held in the College's ITL department.

reasonable accommodations — including a temporary transfer away from Hannon in January 2004, a schedule under Faulk which would permit him to attend his Tuesday and Thursday doctor's appointments in February 2004, and finally, a three-day workweek under Faulk beginning in March 2004 — which were undertaken in good-faith to ameliorate the stress that Lloyd experienced when he was on campus. Instead of accepting this reasonable accommodation, Lloyd insisted upon being on campus only three days per which, which would have been a waiver of an essential job function that the College was not required to accept. *See Donahue v. Consolidated Rail Corp.*, 224 F.3d 226, 232 (3d Cir. 2000). Accordingly, we find no error in the court's dismissal of Lloyd's ADA, FMLA, and PHRA discrimination claims.

We also find no error in the District Court's rejection of Lloyd's retaliation claims on the ground that, assuming he had made out a *prima facie* case of retaliation, he could not show that the College's articulated non-retaliatory reasons for its actions were pretextual. Specifically, Lloyd failed to submit specific evidence which would cause a factfinder to either "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious retaliatory reason was more likely than not a motivating or determinative cause of the employer's action." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc) (internal quotation marks omitted). The evidence shows that on the eve of Lloyd's discharge, the College offered Lloyd an administrative position in the ITS Department three days per week. Lloyd failed to report

7

to work and the College determined that he resigned. In claiming that retaliation can be inferred from his "involuntary transfer[]" to the ITS administrative position, Lloyd overlooks the fact that he asked to be removed from Hannon's supervision. This transfer accommodated that request, and also gave Lloyd a sufficiently flexible schedule to enable him to attend his doctors' appointments on Tuesdays and Thursdays: all without reducing Lloyd's salary. Thus, no rational trier of fact could find that Lloyd's transfer was retaliatory. *See Fuentes v. Perskie,* 32 F.3d 759, 765 (3d. Cir. 1994) (explaining that "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence . . . .") (citations and internal quotations omitted).

For all of the foregoing reasons, we will affirm the judgment of the District Court.