NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0682n.06
Filed: November 6, 2008

No. 07-2325

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ROSZETTA MARIE MCNEILL,     )
    )
    Plaintiff-Appellant,     )
    )   ON APPEAL FROM THE UNITED
v.     )   STATES DISTRICT COURT FOR THE
    )   EASTERN DISTRICT OF MICHIGAN
WAYNE COUNTY, et al.,     )
    )
    Defendants-Appellees.     )

Before: MOORE and COOK, Circuit Judges; and HOOD, District Judge.[*]

COOK, Circuit Judge. Plaintiff Roszetta McNeill appeals the district court's grant of summary judgment for her employer, defendant Wayne County (the "County"),[1] on claims that the County violated the Americans with Disabilities Act (the "ADA"), the Michigan Persons with Disabilities Civil Rights Act, and the Michigan Whistleblowers' Protection Act. McNeill contends that the County failed to reasonably accommodate her alleged disabilities—namely, her lupus and thrombocytopenia conditions—and that the County retaliated against her due to those disabilities.

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

[1]McNeill named as additional defendants Wayne County Executive Robert A. Ficano, the Wayne County Sheriff's Office, and Wayne County Sheriff Warren C. Evans. The district court's order granting summary judgment for the County dismissed the Wayne County Sheriff's Office as a party because it is not a legal entity subject to suit.

Despite these allegations, McNeill fails to demonstrate any substantial limitation in her major life activities, and thus is not "disabled" for ADA purposes. On that basis, we affirm.

I.

The district court set forth the pertinent facts:

> Plaintiff initially was hired by Defendant Wayne County in 1997, and she resigned later that year. Three years later, in October of 2000, Plaintiff was rehired by the County as an account clerk, and was assigned to work at a jail facility operated by the Wayne County Sheriff's Office. At the time of Plaintiff's rehiring, the County was aware that she had been diagnosed with lupus and thrombocytopenia, and that she was medically restricted from lifting more than 25 pounds. From October of 2000 until June of 2001, Plaintiff was transferred to different work locations within the same jail facility and reassigned to the afternoon shift at her request, but she resigned from her employment on June 4, 2001 when the County informed her that it was unable to accommodate her request to work at a location other than a jail facility.
>
> Plaintiff again was rehired as a County employee on January 14, 2002, in the position of juvenile detention specialist at the Wayne County Juvenile Detention Facility. Again, it appears that the County was aware that she suffered from lupus and thrombocytopenia, and that she was restricted from lifting more than 25 pounds. Although Plaintiff worked well at the detention facility, she contends that she was no longer able to remain at this facility after sustaining workplace injuries to her hands and right knee on October 19, 2003. Rather, because the detention center was a "no restrictions" facility, and because the County purportedly refused her requests for placement in a job with the same classification and rate of pay, Plaintiff claims that she had no other choice but to accept a "medical demotion" to the position of account clerk.
>
> When such a position became available with the Wayne County Clerk's Office in the Lincoln Hall of Justice, Plaintiff was placed in this position on February 23, 2004, where she remained until after this suit was filed. In late July or August of 2005, she was reassigned to work at the Coleman A. Young Municipal Center.
>
> Throughout the period of her employment with Wayne County, Plaintiff has filed a number of [Equal Employment Opportunity Commission ("EEOC")] charges,

and also has commenced at least two prior suits in Wayne County Circuit Court. The present action followed closely after Plaintiff received a right-to-sue letter from the EEOC dated June 30, 2005, which in turn was based on an EEOC charge that Plaintiff filed on or around May 4, 2005. Since commencing this suit, Plaintiff apparently has filed one or more additional EEOC charges.

Def's. App. at 247–48.

## II.

### A.

We review de novo the district court's grant of summary judgment. *See Jones v. Potter*, 488 F.3d 397, 402 (6th Cir. 2007). Drawing all inferences in McNeill's favor, we will affirm where no genuine issue exists as to any material fact and the County is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The County bears the burden of demonstrating no genuine issue of material fact, but McNeill must "do more than simply show that there is some metaphysical doubt as to the material facts." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*, 538 F.3d 469, 472 (6th Cir. 2008) (quoting *Matsushita*, 475 U.S. at 586); *see also* Fed. R. Civ. P. 56(e)(2) (providing that the non-moving party "may not rely merely on allegations . . . rather, its response must . . . set out specific facts showing a genuine issue for trial").

### B.

Among other elements, recovery under the ADA requires a qualifying disability, defined as "(A) a physical or mental impairment that substantially limits one or more . . . major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see also Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 553 (6th Cir. 2008) (setting forth the elements required to prevail in a disability discrimination case). The EEOC describes major life activities as including "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). To be "substantially limited" in such activities means that an individual is "[u]nable to perform a major life activity that the average person in the general population can perform" or is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to . . . [an] average person in the general population." 29 C.F.R. § 1630.2(j)(1). Although the district court agreed that McNeill's medical records and diagnoses suggested impairments that "diminished [her] quality of life and restricted her daily activities to some extent," Def's App. at 259–60, the court concluded that McNeill did not demonstrate ADA disability because she failed to establish that these impairments substantially limit major life activities. We agree.

McNeill raises two specific challenges, both of which prove unavailing. First, she relies on her doctors' diagnoses to argue that her impairments substantially limit major life activities. *See* 42 U.S.C. § 12102(2). In a June 2005 request for accommodation, McNeill's primary-care physician,

Dr. Marc A. Feldman, noted that she suffered physical impairments such as arthralgias, myalgias, fatigue, and thrombocytopenia. But in the same document, Dr. Feldman expressly stated that McNeill's impairments did not substantially limit any major life activity. JA 207. And although her psychiatrist, Dr. John T. Dziuba, diagnosed her with recurrent depression, he conceded that he was "unclear" as to whether McNeill had a substantially limiting impairment because he saw her "infrequently" and could not give a "current assessment based on limited contact." Pl.'s Response, Ex. 21. McNeill also produced a May 2001 letter from Dr. James Leisen that diagnosed her with Systemic Lupus Erythematosus and recommended that McNeill not work in "an office environment that is cold, damp, and drafty" due to her "sensitivity to environmental conditions." Def's Mot. for Summ. J., Ex. 8. But the letter is similarly silent on whether McNeill's lupus substantially limits any major life activities.

Although McNeill attempts to rely on these records of physical impairments, without more, medical diagnoses alone are insufficient to support disability status under the ADA. *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 198 (2002). McNeill presents no concrete evidence that these conditions substantially limit her major life activities. And even were we to assume that her lupus causes sensitivity to environmental conditions that affects her ability to work, McNeill fails to allege or demonstrate that her inability to work in cold or drafty environments precludes her from working "a class of jobs or a broad range of jobs in various classes." *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999) (quoting the EEOC's requirement in 29 C.F.R. § 1630.2(j)(3)(i) that ADA

plaintiffs allege an inability to work in a "broad class of jobs" if the major life activity at issue is working); *Black v. Roadway Express, Inc.*, 297 F.3d 445, 452 (6th Cir. 2002) (same). Likewise, despite McNeill's assertions that her diagnosed impairments "resulted in a loss of appetite, fatigue, joint pain and stiffness, restricted movement in her knee and shoulders, difficulty in sleeping, stress, depression, and an inability to drive, do yard work, or write," we agree with the district court that those summary claims are "utterly unsupported by any citation whatsoever to evidence in the record." Def's. App. at 257; *see Black*, 297 F.3d at 454–55 (concluding that an ADA plaintiff failed to demonstrate substantial limitation in major life activities where the plaintiff merely presented conclusory affidavits and reports and internal contradictions existed in the record).

Second, McNeill contends that her eligibility for Social Security disability insurance ("SSDI") from 1996 through 2000 constitutes a "record" of a substantially limiting impairment for ADA purposes. *See* 42 U.S.C. § 12102(2). But the EEOC emphasizes that "[t]he fact that an individual has a record of . . . disability retirement, or is classified as disabled for other purposes does not guarantee that the individual will satisfy the [ADA] definition of 'disability.'" 29 C.F.R. app. § 1630.2(k). This court recently noted, moreover, that "a disability determination by the Social Security Administration, even if substantiated, would not be controlling [for a determination of ADA disability]." *Thornton v. Federal Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008); *see also Lloyd v. Washington & Jefferson College*, No. 07-2907, 2008 WL 2357734, at *2 n.1 (3d Cir. June 11, 2008) (rejecting a contention that the "receipt of SSA benefits qualifies as a 'record of impairment'"

because the SSA's definition of disability differs from the ADA's definition of disability"); *Horwitz v. L. & J.G. Stickley, Inc.*, 20 F. App'x 76, 80–81 (2d Cir. 2001) (same). Remarking on this distinction, the Supreme Court compared the two procedures for determining disability and concluded that an individual qualifying for SSDI could fail to be substantially limited in performing major life activities under the ADA. *Cleveland v. Policy Mgmt. Sys. Corp.* 526 U.S. 795, 803–04 (1999). The *Cleveland* Court also refused to find the SSA and ADA designations of disability equivalent because the SSA's procedure for administering SSDI involves a variety of presumptions, including a list of automatically qualifying impairments. *Cleveland*, 526 U.S. at 804. These administrative rules are qualitatively distinct from the ADA's "more fact-intensive inquiry." *Horwitz*, 20 F. App'x at 81. McNeill makes no effort to distinguish the precedent against her, so we reject her argument that a record of SSDI benefits controls our determination of ADA disability.

III.

Because neither doctors' diagnoses nor SSDI benefits suffice to demonstrate that McNeill's impairments substantially limit her major life activities, McNeill's conditions are not qualifying disabilities under the ADA. The district court properly granted summary judgment for the County on McNeill's ADA claims, and likewise properly declined to exercise supplemental jurisdiction over the remaining state-law claims. *See Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir. 2005) (applying the deferential abuse-of-discretion standard in concluding that the district court need not exercise

supplemental jurisdiction over pendent state-law claims where the court dismissed the federal

claims).  We affirm.