NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0380n.06

Case No. 23-3692

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Sep 06, 2024
KELLY L. STEPHENS, Clerk

KEITH SIEFERT,

     Plaintiff - Appellant,

v.

LIBERTY TOWNSHIP,

     Defendant - Appellee.

)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

Before: BOGGS, MOORE, and GIBBONS, Circuit Judges.

GIBBONS, J., delivered the opinion of the court in which BOGGS, J., concurred. MOORE, J. (pp. 11–18), delivered a separate opinion concurring in part and dissenting in part.

JULIA SMITH GIBBONS, Circuit Judge. Plaintiff Keith Siefert appeals the district court's order granting Defendant Liberty Township[1] summary judgment on Siefert's claims against the Township for interference with his leave rights under the Family and Medical Leave Act ("FMLA") and for employment discrimination in violation of the Ohio Civil Rights Act ("OCRA"). Because Siefert fails to raise a genuine dispute of fact as to the reason for his termination from the Township's employ, we affirm.

I.

Liberty Township employed Keith Siefert as a maintenance technician.[2] Among other responsibilities, that role required that Siefert service and maintain the Township's vehicles, including those of its police department.

---

[1] Liberty Township is located in Trumbull County, Ohio.

[2] We take the facts in the light most favorable to Siefert, the non-movant. *Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 426 (6th Cir. 2014).

In July 2020, the Township's police captain tasked Siefert with installing new dashboard cameras in four of the Township's police cruisers. The captain gave Siefert two weeks to complete the installations, and although Siefert had not previously worked with such equipment, he told the captain that he could finish the installations on that timeline. The captain also impressed upon Siefert the importance of completing the task on time, as representatives from the dashcam manufacturer were set to fly in and install software on the day of the deadline.

Despite Siefert's assurances, the installations did not go as planned. Over the following two weeks, both the police captain and the Township's IT specialist periodically checked in with Siefert to assess his progress and, as late as four days before the agreed deadline, Siefert indicated that he would get the cameras installed on time. Yet on deadline day, three of the dashcams were either not installed properly, or not installed at all. And to make matters worse, when the Township's IT specialist stopped by Siefert's workstation that afternoon to ask him about the mis-installed cameras, Siefert was on his computer scrolling through classmates.com, a social-networking site. When questioned about the installations, Siefert ignored the IT specialist — a behavior that struck the specialist as "out of character." DE 24–1, Davis Dep. at 27–28, Page ID 597. The same day, Township officials learned that Siefert had not only failed to complete the necessary installations, but had, in fact, worked on a police vehicle *not* slated for a new dashcam, damaging that vehicle — which was brand new — in the process. Likewise, Township officials learned that Siefert spent several hours a day during the two-week project surfing personal websites on his computer. An official communicated this information to a Township trustee that evening.

Sadly, Siefert's failure to complete the dashcam project foreshadowed a mental health crisis. On the eve of the installation deadline, Siefert's wife noted that Siefert was behaving oddly;

the following day, she noticed the same thing. So, when Siefert failed to return home at his usual hour on deadline day, Siefert's wife grew concerned, and, around 4:30 PM, she went to the Township garage to investigate Siefert's whereabouts. There, she encountered Siefert again acting strangely, and she tried to coax Siefert "into her car so she could take him home." DE 26, Joint Stip., Page ID 684. Yet Siefert refused. Siefert's wife then enrolled the help of several Township police officers, including the police captain and the chief of police. But the officers' efforts to get Siefert into his wife's vehicle also failed, and the police captain ultimately called for an ambulance. Siefert was taken to the hospital, and he spent three days hospitalized for inpatient psychiatric treatment.

Meanwhile, the Township quickly moved to terminate Siefert's employment. On the evening of Siefert's hospitalization, a Township trustee inspected the damaged police vehicle and reviewed Siefert's internet history. Two days later, with Siefert still hospitalized, the Township trustees met for a board meeting, voting unanimously to discharge Siefert from his role as the Township's maintenance technician. The trustees then dispatched the Township's chief of police to the hospital with a termination letter, which informed Siefert that "[t]he Liberty Township Trustees ha[d] terminated [his] at-will employment effective immediately." DE 23-1, Meloro Dep. Ex. 1, Page ID 573. The letter contained no further explanation for his firing.

. . .

Roughly two years later, Siefert brought the instant action in the Trumbull County Court of Common Pleas, claiming that Liberty Township interfered with his leave rights under the FMLA, 29 U.S.C. § 2615(a)(1). After the Township removed the action to the United States District Court for the Northern District of Ohio, Siefert filed his first amended complaint, adding

a claim for disability discrimination under OCRA. The Township moved for summary judgment, and the district court granted the motion as to both of Siefert's claims. This appeal timely followed.

## II.

This court reviews the district court's grant of summary judgment de novo. *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023).

## III.

## A.

We begin with Siefert's FMLA claim. When an eligible employee suffers from a "serious health condition that makes the employee unable to perform the functions" of his job, the FMLA mandates that qualifying employers provide up to twelve weeks of annual leave. 29 U.S.C. § 2612(a)(1)(D). An employer that interferes with, restrains, or denies an employee's attempt to exercise his FMLA leave rights violates the Act. *Id.* § 2615(a)(1). Where, as here, a plaintiff premises his FMLA claim on circumstantial evidence, we evaluate the claim under the familiar *McDonnell Douglas* burden-shifting framework. *See Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283 (6th Cir. 2012).

Under that framework, we agree with the district court's conclusion that the Township is entitled to summary judgment. Like the district court, we are satisfied that Siefert made out a prima facie case of FMLA interference, and we also agree that the Township met its burden to proffer a legitimate, non-discriminatory reason for Siefert's termination. *See Siefert v. Liberty Twp.*, No. 4:22-CV-1453, 2023 WL 4904036, at *4 (N.D. Ohio July 31, 2023). The issue in this case, and the juncture at which Siefert's claim ultimately falls short, is in his effort to show that the Township's reasons for firing him were pretextual.

Generally speaking, an FMLA plaintiff can show pretext by demonstrating that his employer's stated reasons for terminating him either "(1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." *Seeger*, 681 F.3d at 285. The first and third options are non-starters for Siefert, because the record makes clear that the Township's stated reasons for his termination — his failure to timely complete the dashcam project, the damage he caused to a brand new police vehicle, and his excessive internet use for personal purposes — have a robust basis in fact[3] and were sufficient to justify his dismissal.[4] *See Manzer*, 29 F.3d at 1084. Thus, to demonstrate pretext, Siefert must show that the Township's stated reasons for terminating him were not genuine.

To that end, Siefert points to three pieces of evidence: (1) the temporal proximity between his psychiatric episode and his termination; (2) the Township police captain's deposition testimony that Siefert may not have been fired but for his psychiatric issues; and (3) the affidavit testimony of Siefert's wife that the Township administrator and the chief of police told her, in the immediate aftermath of Siefert's termination, that the Township's trustees felt Siefert was "unsafe." DE 29–

---

[3]     To evaluate whether the Township's justifications for Siefert's termination have a basis in fact, "we simply inquire whether the proffered bases for h[is] discharge actually happened." *Santiago v. Meyer Tool Inc.*, No. 22-3800, 2023 WL 3886405, at \*5 (6th Cir. June 8, 2023). The record is clear that Siefert indeed failed to timely complete the dashcam project, damaged a new police vehicle, and used his work computer to view personal websites for several hours a day.

[4]     Typically, a plaintiff can show that his employer's rationale was "insufficient to motivate discharge" by pointing to "evidence that other employees . . . were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)*, overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). Here, Siefert fails to identify any other Township employees who engaged in substantially identical conduct — that is, employees who failed to complete an important project, damaged Township property, and used their work computer for personal purposes in excess — yet were not terminated. At best, Siefert identifies employees who transgressed in *one* of those three areas.

2, Tami Siefert Aff. at ¶¶ 24–25, Page ID 995.  Yet these portions of the record fail to show that the Township's reasons were mere pretext.

First, while the temporal proximity between Siefert's psychiatric break and his termination "gives us pause," we have time and again held that temporal proximity alone is insufficient to show pretext.  *Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012) ("[T]he law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext."); *see also EEOC v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015).  Without accompanying evidence indicative of improper motive, the temporal proximity between Siefert's mental health crisis and his termination is simply not enough to raise a triable issue of fact.  *See Donald*, 667 F.3d at 763.

Second, the police captain's deposition testimony, even viewed in the light most favorable to Siefert, is nothing more than the vague and unsupported speculation of a non-decisionmaker,[5] and it is well-established that mere "rumors, conclusory allegations[,] and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992); *see also Lindsay v. Yates*, 578 F.3d 407, 421 (6th Cir. 2009) ("[M]ere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." (quoting *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 470 (6th Cir. 2002))); *Hein v. All America Plywood Co.*, 232 F.3d 482, 490 (6th Cir. 2000) ("[S]ubjective interpretations are insufficient as a matter of law to establish a discrimination claim."); *Smith v. Toledo*, 13 F.4th 508, 519 (6th Cir. 2021).

---

[5] Captain Buhala expressly denied having disciplinary authority over Siefert, and his deposition testimony makes clear that he lacked general decisionmaking authority over Siefert as well.

And third, the affidavit testimony of Siefert's wife is inadmissible hearsay and, therefore, it "must be disregarded" at summary judgment.[6] *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997)). While evidence submitted in opposition to a motion for summary judgment need not be proffered in admissible form to be considered, the party opposing summary judgment must, if he is to show a genuine dispute of material fact, "set forth enough evidence that will be admissible at trial to demonstrate that a genuine dispute of material fact exists, and that a trial is necessary to resolve the dispute." *Hurick v. McKee*, 2018 WL 4908138, at *3 (6th Cir. Apr. 30, 2018); *see also Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) ([T]he party opposing summary judgment must show that she can make good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary."); *Bailey v. Floyd Cnty. Bd. of Educ. By & Through Towler*, 106 F.3d 135, 145 (6th Cir. 1997) ("The proffered evidence need not be in admissible form, but its content must be admissible."). In short, the proffered evidence "still must be admissible." *N. Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997); *see also U.S. Structures, Inc.*, 130 F.3d at 1189 ("[E]vidence submitted in opposition to a motion for summary judgment must be

---

[6] Tami Siefert's affidavit states that Martha Weirick (the Township Administrator) and Toby Meloro (the Township Police Chief) told her that the Township's trustees terminated her husband because they felt he was "unsafe." DE 29–2, Tami Siefert Aff. ¶ 24–25, Page ID 995. The only plausible route to admission for these out-of-court statements would be a demonstration that they are attributable to the opposing party — in this case, the Township. *See* Fed. R. Evid. 801(d)(2)(C), (D). But both Weirick and Meloro testified that they lacked decisionmaking authority over Siefert's employment, instead pointing to the Township's trustees as the ultimate decisionmakers with respect to his termination. And Siefert himself stipulates that the Township trustees determined his termination by unanimous vote. So, while it seems likely that any statements of the trustees about Siefert's safety could be attributed to the Township, the statements of Weirick and Meloro conveying their sentiments to Tami Siefert could not be admitted under Rule 801(d)(2)(C) or (D). *See* Fed. R. Evid. 805.

admissible.") But Siefert did not set forth any evidence indicating that the content of his wife's testimony will be admissible.[7] Accordingly, any hearsay evidence contained in the affidavit of Seifert's wife "must be disregarded" absent an applicable exception. *Alpert*, 481 F.3d at 409.

In sum, Siefert fails to identify facts from which a rational juror could conclude that the Township's decision was motivated by something other than its stated reasons. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). Accordingly, the district court did not err when it granted summary judgment in the Township's favor.

B.

Our conclusion with respect to Siefert's claim under the Ohio Civil Rights Act is the same. Siefert's complaint advances two theories of OCRA liability, alleging both that the Township terminated him because of his psychiatric disability and that it failed to reasonably accommodate that disability by providing leave. The discriminatory termination theory, which we analyze under the *McDonnell Douglas* framework, *see Arnold v. City of Columbus*, 515 F. App'x 524, 529–30 (6th Cir. 2013), fails because, even if we assume that Siefert established a prima facie case of disability discrimination under Ohio law,[8] the Township's legitimate, non-discriminatory reasons

---

[7]     Meloro expressly denied ever telling Tami Siefert that the trustees felt Siefert was unsafe, and Weirick stated that Siefert was terminated for "damaging vehicles and not performing [his] job." DE 28-1, Weirick Dep. at 18, Page ID 732; DE 23-1, Meloro Dep. at 37–38, Page ID 562. This undermines any claim that Siefert could submit the contents of Tami Siefert's testimony in a form that would be admissible come trial. At bottom, Siefert fails to argue, much less show that the out-of-court statements his wife attributes to Weirick and Meloro would be admissible in any form.

[8]     The district court granted summary judgment to the Township based, in part, on its finding that Siefert failed to demonstrate that his psychiatric illness "substantially limit[ed] his major life activities," a prerequisite to showing OCRA disability that is, in turn, a prerequisite to establishing

for his termination meet its burden. *See Barber v. Chestnut Land Co.*, 63 N.E.3d 609, 625 (Ohio Ct. App. 2016) ("Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken.") With the burden back on Siefert to demonstrate that those reasons are pretextual, Siefert falls back on the same arguments he advanced with respect to his FMLA claim. For the reasons we discussed in the preceding pages, those arguments do not suffice to demonstrate pretext. *See supra* Part III.A. So Siefert's discriminatory termination theory fails on the same grounds.

Siefert's failure to accommodate theory also fails. In a failure to accommodate claim under OCRA, the plaintiff's prima facie burden is fivefold, requiring that he show: (1) he is disabled

---

a prima facie case of discriminatory termination. *See Siefert*, 2023 WL 4904036, at *7. Siefert's illness did not substantially limit him, the court found, because "there is no indication that [his] limitations were permanent or long-term especially given that [Siefert] was discharged from the hospital [three days after his admission] and was permitted to return to work [twelve days after that]." *Id.* (citing *Edwards v. Dialysis Clinic, Inc.*, 423 F. Supp. 2d 789, 797 (S.D. Ohio 2006)).

This analysis relied on cases which themselves rely on, as an interpretive aid, EEOC regulations interpreting the meaning of "substantially limits" within the Americans with Disabilities Act ("ADA'). *See id.* (citing *Edwards*, 423 F. Supp. 3d at 797 and *McNeill v. Wayne County.*, 300 F. App'x 358, 361 (6th Cir. 2008)). As a matter of statutory interpretation, this practice is altogether appropriate given that OCRA and the ADA mirror each other in many important respects. *See Creveling v. Lakepark Industries, Inc.*, 169 N.E.3d 21, 32 (Ohio Ct. App. 2021); *see also King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 569 n.1 (6th Cir. 2022) (Griffin, J., dissenting). But importantly, the district court's analysis relied on cases decided *before* the ADA Amendments Act of 2008 (the "ADAAA"). Those cases thus cite to a Code of Federal Regulations definition of "substantially limits" that the Department of Labor rewrote in whole cloth after passage of the ADAAA. *Compare* 29 C.F.R. § 1630.2(j) (1991) *with* 29 C.F.R. § 1630.2(j) (2011); *see also* Regulations To Implement the Equal Employment Provisions of the Americans With Disabilities Act, as Amended, 76 Fed. Reg. 16,978 (Mar. 25, 2011) (to be codified at 29 C.F.R. pt. 1630). Accordingly, the district court likely erred when relying on these cases, and more recent Ohio law suggests that its understanding of whether Siefert's psychiatric illness "substantially limit[s] his major life activities" should have been grounded in the current version of 29 C.F.R. § 1630.2(j). *See, e.g.*, *Creveling*, 169 N.E.2d at 32 (relying on the current C.F.R. provision).

Nevertheless, because we review the district court's summary judgment order de novo, this error does not impact our analysis, and we highlight the issue only to provide guidance for district courts that confront similar questions moving forward.

under Ohio Rev. Code § 4112.02; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) his employer knew or had reason to know of the disability; (4) he requested a reasonable accommodation; and (5) his employer failed to provide the reasonable accommodation. *Most v. BWXT Nuclear Operations Grp., Inc.*, 743 F. App'x 664, 670 (6th Cir. 2018) (citing *Stewart v. Bear Mgmt., Inc.*, 98 N.E.3d 900, 905 (Ohio Ct. App. 2017)). At a minimum, Siefert fails to set forth a genuine issue of material fact as to the fourth element, as he does not identify, or even attempt to identify, any evidence demonstrating that he requested a reasonable accommodation from the Township. *See Lowes v. Baldwin*, No. 20-3078, 2020 WL 7974381, at *2 (6th Cir. Oct. 15, 2020) (affirming summary judgment on OCRA accommodation claim where plaintiff "failed to identify an accommodation request that was denied"); *cf. King*, 30 F.4th at 564–566 (discussing circumstances "that could qualify as a request for an accommodation" under OCRA in the absence of an explicit request to the plaintiff's employer). Accordingly, Siefert's failure to accommodate theory of OCRA liability also lacks merit. And given the fatal flaws in Siefert's OCRA claim under either theory, the district court was correct to grant summary judgment for the Township on Siefert's state law claim.

IV.

For the foregoing reasons, we affirm.

**KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part.**

We agree on much at issue in this appeal. We agree that Siefert cannot make out a claim under the Ohio Civil Rights Act (OCRA).[1] And we evidently agree that Siefert's proffered evidence in this case—the temporal proximity between his hospitalization and his termination; statements from Weirick, the Township administrator, and Meloro, the chief of police; and statements from Captain Buhala—would at a minimum create a triable issue of fact concerning the Township's actual motivations for firing Siefert as relevant to the FMLA claim. The majority, however, throws all of this evidence out based on evidentiary concerns that *were never raised* below or on appeal, violating bedrock principles requiring parties to object to evidence and to present their issues to the courts. I respectfully dissent.

Before reaching the majority's analysis, it is important to emphasize that the Township never argued—or even hinted at—any evidentiary problems with the summary-judgment record. But taking away a claim that should move forward, the majority resolves this case on grounds never discussed or addressed by the parties or the district court. The majority's evident view of how defense counsel *should have* proceeded in this case violates the party-presentation principle. "[A]s a general rule, our system is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to" their preferred outcome. *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) (internal quotation marks and citation omitted). Though a "supple" rather than "ironclad" principle, surely invoking an entire doctrine never raised by the parties or considered by the district court to end Siefert's case transgresses any "modest initiating role" that

---

[1] I would, however, resolve the OCRA claim on different grounds: Siefert failed to establish a prima facie case because he did not show he was actually disabled, regarded as disabled, or that he had a record of disability.

a court may undertake. *Id.* at 376. It will come as a great surprise to both parties that this case ends due to evidentiary matters never even adverted to by either side. Moreover, a corollary to the party-presentation principle is the doctrine of forfeiture. In a similar case, this court considered potentially inadmissible hearsay at the summary-judgment stage—thus allowing a claim to move forward to trial—because the moving party "did not raise [its] hearsay objection before the district court" and thus "forfeited the objection." *MY Imagination, LLC v. M.Z. Berger & Co.*, 726 F. App'x 272, 276 n.2 (6th Cir. 2018); *see also Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) ("If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and we will review such objections only to avoid a gross miscarriage of justice."). There is certainly no "gross miscarriage of justice" here, "because unobjected-to hearsay is admissible" at trial, and in any event the Township could raise any potential objections at trial. *MY Imagination*, 726 F. App'x at 276 n.2 (internal quotation marks and citation omitted).

Next, under Federal Rule of Civil Procedure 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." The majority determines that Siefert cannot demonstrate "evidence that *will be admissible* at trial," Maj. Op. at 7 (emphasis added), apparently relying on the latter part of Rule 56(c)(2). In doing so, however, the majority overlooks that the onus is on the Township to *object* that the evidence cannot be proffered in such form. This procedure exists for good reason: once an objection is made, the party seeking to introduce the evidence gets the opportunity to "show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2), advisory committee's note to 2010 amendment. The majority robs Siefert

of this opportunity. Instead, its analysis proceeds *as if* the Township objected and that Siefert then failed to respond adequately. Maj. Op. at 7 n.6 ("The only plausible route to admission for these out-of-court statements would be a demonstration that they are attributable to the opposing party.").

Operating as if the Township objected to the admissibility of Siefert's evidence, the majority then simply declares that hearsay evidence cannot be considered on summary judgment. *Id.* at 7–8. We have explained previously, however, that in spite of cases "refus[ing] to rely on hearsay testimony when considering whether an opposing party has survived summary judgment," determining whether summary-judgment evidence could "be presented in a form that would be admissible in evidence" at trial under Rule 56(c)(2) is substantially more complicated than just deeming statements hearsay. *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 424 & n.8 (6th Cir. 2021). Rather, "the advisory committee's commentary for Rule 56 as well as Supreme Court and Sixth Circuit precedent support [the] conclusion that courts, in determining whether to consider hearsay evidence, may inquire as to whether the party opposing summary judgment is capable of producing an otherwise inadmissible hearsay statement in a form that will be admissible at trial, *i.e.*, via substituted oral testimony by the third-party declarant." *Id.* The majority surmises that Siefert would not be able to elicit oral testimony at trial from Weirick and Meloro because of other statements they made during their depositions. Once again, however, Siefert should have been provided an opportunity to explain how he would admit this evidence at trial *if there had been an objection* by the Township.

Even accepting the majority's flawed premises concerning what Siefert is required to produce at this stage, the evidence is still admissible. The majority rightly notes that, even if Weirick's and Meloro's statements are hearsay, they may nonetheless be admissible if they

constitute statements of a party opponent. Under Rule 801(d)(2)(C) and (D), a statement is not hearsay if it "is offered against an opposing party" and either "was made by a person whom the party authorized to make a statement on the subject" or "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Weirick's and Meloro's statements satisfy both exceptions. Recognizing that the statements are double hearsay, the majority correctly concludes that the trustees' statement is attributable to the Township. Maj. Op. at 7 n.6. The majority then makes a critical mistake, however. It does not matter that Weirick and Meloro "lacked decisionmaking authority" and that they were not the "ultimate decisionmakers," *id.*, comments that misstate the law in any event, *Carter v. Univ. of Toledo*, 349 F.3d 269, 275 (6th Cir. 2003) ("Being a direct decision-maker, of course, constitutes strong proof that a statement was made within the scope of employment, but the 'scope of employment' criterion extends beyond direct decision-makers.").

What matters is that Weirick's and Meloro's statements concerning what the Trustees thought *were* statements made within the scope of *Weirick's and Meloro's* employment. *Id.* at 276 (declarant's hearsay statements were admissible because "[a]lthough [declarant] did not have direct authority to decide whether [plaintiff's appointment] was renewed, his oversight of the affirmative action process at the [u]niversity places his statements concerning the racial composition of the workforce within the ambit of his authority"). Meloro and Weirick made these statements "within the scope of [their] duties as a manager." *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 722 (6th Cir. 2006) (Gibbons, J.) (quoting *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 750 (6th Cir. 2005)). As in *Grizzell*, Meloro—for whom Siefert was working at the time—and Weirick—Siefert's direct supervisor—made these statements in the context of their management of employees, even if the ultimate termination decision was made by the trustees.

*See id.* ("[The declarant] was the deputy chief—one of only five deputy chiefs reporting directly to [the decisionmaker]—charged with managing the promotional process for the [police department]. When [the declarant] spoke on the subject of promotions, he was speaking within the scope of his employment."). More to the point, Meloro was tasked by the trustees with delivering the termination news to Siefert and made his statement concerning what motivated the trustees' action in that context. This clearly satisfies Rule 801(d)(2)(D) because the statement was made within the scope of his employment, and it shows that Meloro was authorized by the trustees under Rule 801(d)(2)(C) to make a statement on the subject at issue—Siefert's termination. These statements are admissible under the party-opponent exception.

The majority simply declares that other evidence, such as that coming from Captain Buhala, is "nothing more than the vague and unsupported speculation of a non-decisionmaker." Maj. Op. at 6. That Buhala was not a "decisionmaker" has no bearing on whether to consider this evidence because the hearsay analysis above is not applicable. Regardless, the majority skips over the fact that Buhala was extensively involved in the relevant events. Indeed, he supervised Siefert's work on the WatchGuard project; investigated Siefert's relevant work issues; assisted in transporting Siefert when Siefert experienced his psychiatric episode; and closely monitored Siefert's wellbeing following the hospitalization. Beyond this point, one is left to wonder why Buhala's testimony cannot be considered at this juncture. Buhala's direct testimony concerning what he—a person who was extensively involved in the relevant events—believed may have factored into the termination decision is far different than vague and conclusory allegations that this court has not considered on summary judgment. The majority hardly even *attempts* to analogize to the facts of the cases it invokes for the rote statement that Buhala's testimony constituted "unsupported speculation." *See, e.g.*, *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85

(6th Cir. 1992) (plaintiff's own "hearsay [a]ffidavit that she had heard from some unidentified [h]ospital employees that at some unspecified point in time two white female employees supposedly had kept medicare and personal checks payable to the [h]ospital in their desks but were not discharged" was "insufficient evidence"); *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 490 (6th Cir. 2000) (plaintiff's own "subjective interpretation" of certain evidence was insufficient). A basic part of our judicial system is that we do not "resolve . . . dispute[s] in" one party's "favor" or "supplant our view of the evidence for that of the jury, which is improper when a reasonable juror could find otherwise." *George v. Youngstown State Univ.*, 966 F.3d 446, 463 (6th Cir. 2020). By making credibility determinations about evidence based simply on what weight *it* believes the evidence deserves, the majority invades the role of the jury.

Properly considering the evidence at this stage, as we must, a triable issue exists concerning the Township's true motivation for firing Siefert. "[S]uspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012) (quoting *Bell v. Prefix, Inc.*, 321 F. App'x 423, 431 (6th Cir. 2009) (citation and internal quotation marks omitted)). And everyone agrees in this case that the timing of Siefert's termination is highly problematic—Siefert was fired just two days after his mental breakdown and while he was still hospitalized. But, in addition to the suspicious timing, Siefert offers independent evidence that, as noted above, the majority wrongly failed to consider: Buhala stated that Siefert "maybe" would not have been terminated if he had not had a medical issue at work, R. 19-1 (Buhala Dep. at 76:22–77:17) (Page ID #147–48), and multiple Liberty Township employees stated that they thought Siefert was "unsafe," *see* R. 29-2 (Tami Siefert Aff. at 2) (Page ID #995). The Township does not refute Buhala's statement.

The Township does attempt to refute Siefert's argument that people called him "unsafe," by arguing that it "was *because of the termination*, not because of his medical condition." Appellee Br. at 23. Siefert, however, presents evidence that at least one Township official—Buhala—was concerned that Siefert was unsafe prior to any discussion of termination. *See* R. 19-1 (Buhala Dep. at 65:3–66:16) (Page ID #145). Siefert, moreover, presents evidence that both Chief Meloro and Martha Weirick, Siefert's direct supervisor, discussed concerns about Siefert being unsafe as an "explanation" for his termination, not merely as a concern raised because of the termination. R. 29-2 (Tami Siefert Aff. at 2) (Page ID #995).

A jury could certainly find that the Township's reasons were legitimate and the true reasons for terminating Siefert. But, based on Siefert's evidence that (1) he was terminated two days after his at-work mental breakdown and while he was still in the hospital, (2) the Township officials repeatedly stated that Siefert was unsafe, even before termination was being discussed, and (3) Buhala stated that Siefert may not have been terminated but for his medical emergency, a jury could instead reasonably doubt the Township's explanation and find that it terminated Siefert for discriminatory reasons. The Township is, accordingly, not entitled to judgment as a matter of law.

The majority reaches the conclusion that "[w]ithout accompanying evidence indicative of improper motive, the temporal proximity between Siefert's mental health crisis and his termination is simply not enough to raise a triable issue of fact." Maj. Op. at 6. But it is clear that there *is* evidence of improper motive in this case. The majority just does not want to look at it. In reaching this conclusion, the majority first places itself in the shoes of defense counsel and raises evidentiary issues that the defense never raised. In doing so, it violates basic principles of party presentation, forfeiture, and how summary-judgment proceedings take place. Then, it places itself in the shoes of the jury, assigning weight to evidence and simply disbelieving statements from witnesses.

That plainly violates our role at this juncture. The end result is that this case terminates for Siefert, despite his raising triable issues and putting forth evidence the propriety of which was never previously challenged. I respectfully dissent.